IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

BENONY TONY AMEKUDZI,

                                Plaintiff,

v.                                          Action No. 3:07–CV–645

BOARD OF CITY OF RICHMOND
PUBLIC SCHOOLS, et al.,

                                Defendants.

MEMORANDUM OPINION

THIS MATTER, a civil rights suit by a person formerly employed as a substitute teacher for the Richmond Public Schools ("RPS") against its Board and several of its officials, is before the Court on its own initiative. For the reasons stated below, Amekudzi's Amended Complaint shall be DISMISSED WITH PREJUDICE.

On October 30, 2007, the Court granted Amekudzi's Motion for Leave to Proceed in Forma Pauperis and his Complaint was filed. On the same day, the Complaint was dismissed without prejudice for failing to state a claim for which relief can be granted, pursuant to the federal statute governing claims filed in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B)(ii); see also Neitzke v. Williams, 490 U.S. 319, 324 (1989) (ruling that a court may dismiss a suit pursuant to section 1915 on its own initiative, to spare the defendants "the inconvenience and expense of answering [the] complaint[]").

If a complaint is dismissed without prejudice for a defect that is apparent from the face of the complaint, the plaintiff may "save his action by ... amending his complaint."

See Young v. Nickols, 413 F.3d 416, 418 (4th Cir. 2005) (ruling that an order dismissing a complaint without prejudice is final only if it clearly indicates that the plaintiff could not eliminate the defect(s) in the complaint by amending it); see also Al-Amin v. Shear, 218 Fed. App'x 270, 273 (4th Cir. Feb. 21, 2007) (implying that a complaint that contains a "pleading error" may be corrected by amendment). But see GO Computer, Inc. v. Microsoft Corp., — F.3d —, 2007 WL 4098234, *5 (4th Cir. Nov. 19, 2007) (suggesting that a dismissal without prejudice "naturally leave[s] open the possibility of further litigation" in the form of "a new lawsuit"). Since the Court's Order of October 30, 2007 did not clearly indicate that the defects in Amekudzi's Complaint were incurable, Amekudzi was entitled to amend his Complaint, which he did on November 1, 2007.

In that Amended Complaint, Amekudzi alleges that he was employed by the RPS as a substitute teacher in September 2005. He alleges that he was asked to write a report suggesting ways in which the RPS could improve the quality of the education that it provides. In March 2006, he submitted the report to the Board of the RPS and sent complimentary copies to several luminaries, including President George W. Bush. But, Amekudzi alleges, Defendant Robinson "hijacked" the report and Defendants Jewell-Sherman and Fitrer retaliated against Amekudzi for writing the report by forming an "Organized Gang[]" against him. Pl.'s Am. Compl. at 5. Moreover, Amekudzi alleges, Defendants removed his name from the list of substitute teachers eligible to be employed by the RPS, banned him from entering school property, frustrated his efforts to secure another job, changed his "personal identification number," id. at 6, stole his federal income tax

refund for 2005, and abducted his daughter. Amekudzi contends that Defendants' conduct violates 42 U.S.C. § 2000 and constitutes fraud. He seeks damages of $45 million, a sum that includes the salary that he allegedly would have commanded as a first-year associate in a law firm,[1] and other income that he allegedly would have earned from a international consulting firm that Defendants' conduct prevented him from forming.

In the context of a motion under Federal Rule of Civil Procedure 12(b), the Court accepts as true all of the factual allegations in the complaint, see Erickson v. Pardus, 127 S.Ct. 2197, 2200 (June 4, 2007), and views them in the light most favorable to the plaintiff, see Christopher v. Harbury, 536 U.S. 403, 406 (2002), but does not accept legal conclusions that are couched as factual allegations, see Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (May 21, 2007). And, since Amekudzi is proceeding on his own behalf, the Court must construe his claims liberally. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972). However, section 1915 – in addition to authorizing the Court to dismiss a suit that fails to state a claim for which relief can be granted – allows the Court to dismiss a claim that "is frivolous or malicious" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i),(iii). Under that standard, the Court may "pierce the veil of [a complaint's] factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327 (stating also that a judge may dismiss any claim "describing fantastic or delusional scenarios"). In addition, Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss a "patently insubstantial claim."

---

[1] Amekudzi is a member of the American Bar Association.

See Neitzke, 490 U.S. at 327 n.6. Applying those standards to Amekudzi's Amended Complaint, the Court finds that none of his claims survive review.

Amekudzi claims that Defendants violated Title VII by discriminating against him on the basis of his national origin, race, and religion. Under Title VII, an employer may not "fail or refuse to hire[,] ... discharge ... or otherwise ... discriminate against any individual with respect to his compensation [or the] terms, conditions, or privileges of [his] employment, because of [his] race, color, religion, sex, or national origin," or "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of [that] individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); see Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2411 (2006). A party bringing a claim under Title VII must establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

To support his claim that Defendants discriminated against him on the basis of his national origin, Amekudzi alleges only that (1) he is from Ghana; (2) Defendants did not follow his suggestions for improving public education in this country; and (3) Defendants formed an "Organized Gang[-]Related Group," Pl.'s Am. Compl. at 5, against him. But, Title VII does not proscribe rejecting an employee's ideas. Nor does Amekudzi offer any facts to support his allegation that Defendants acted like a gang. And, construing Amekudzi's claim liberally – as including his allegation that his name was removed from the

list of substitute teachers eligible to be employed by the RPS[2] – the Court finds that Amekudzi's argument that Defendants treated him as they did <u>because</u> he comes from Ghana is wholly conclusory, unsupported by any facts or argument. Since Amekudzi has failed to establish a prima facie case of discrimination on the basis of national origin, this claim shall be dismissed.

Next, Amekudzi alleges that Defendants discriminated against him because he is black. In support of this claim, Amekudzi states only that Defendants (of whom at least two, according to Amekudzi, are African-American) "did not have fellow Feelings of belongingness" for him and consequently formed an "Organized Gang[-]Related Group" to target Amekudzi and his family. <u>Id.</u> at 6. Neither of those allegations describes conduct that is proscribed by 42 U.S.C. § 2000e–2(a). Construing Amekudzi's claim liberally, the Court finds that he has not alleged any facts that suggest that Defendants acted as they did because of Amekudzi's race. The law of this country does not require people to share sentiments of "belongingness," and the Court hesitates to ascribe the outcome of Amekudzi's employment by the RPS to racial animosity. Since Amekudzi has failed to establish a prima facie case of discrimination on the basis of race, this claim shall be dismissed, also.

Third, Amekudzi alleges that he was the subject of discrimination of the basis of his belief in Christianity. He alleges that Defendants "allowed Magic and Witchcraft to be

---

[2] The Court notes that Amekudzi acknowledges that, at an unspecified time, "Defendants had cause to complain[] about [his] work," Pl.'s Am. Compl. at 4, suggesting that his name was removed from the RPS's substitute teacher list for a legitimate reason.

Taught" to RPS students, id. at 9, and that Defendants invited members of the community (e.g., weather forecasters) to give magical powers (e.g., the ability to control the weather) to students.  Yet, Amekudzi claims, Defendants prohibited him from teaching about Christianity, thwarting his attempts to require students to write about their celebration of Christmas and to "instill ... Strong Moral Character," id., by studying Christian concepts.  Moreover, Amekudzi alleges, several of his students claimed to be able to emit fire from their palms.  When he wrote a memorandum addressing those "Evil Practices," it was ignored, he was targeted by "Organized Gangs," and he was exposed to ridicule and contempt.  Id.

  While a school district may not discriminate against a teacher by virtue of his religious belief, Amekudzi's allegations suggest that the RPS took action against him on the basis of his conduct, which is not protected by either Title VII, see Grossman v. S. Shore Pub. Sch. Dist., — F.3d —, 2007 WL 3377167 (7th Cir. Nov. 15, 2007) (Posner, J.), or the First Amendment to the United States Constitution, as interpreted by the United States Supreme Court, see, e.g., Edwards v. Aguillard, 482 U.S. 578, 584 (1987) ("Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family.").  While the RPS must reasonably accommodate Amekudzi's religious beliefs, see Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74 (1977), it is not required to permit Amekudzi to turn his classroom into a pulpit.  In fact, if it did so, it could be held liable for violating the

Establishment Clause, given that young students naturally emulate their teachers' examples. See Edwards, 482 U.S. at 583–84. Thus, the Court finds that Defendants' conduct was justified by Amekudzi's declamation of Christian doctrine to students of the RPS, not motivated by hostility to his religious beliefs. Thus, the Court shall dismiss this claim, too.

Fourth, Amekudzi alleges that Defendants retaliated against him. Title VII forbids an employer from discriminating against an employee because the employee opposed a practice prohibited by Title VII or participated in an investigation or proceeding pursuant to Title VII. 42 U.S.C. § 2000e–3(a); see Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2410 (2006). However, Amekudzi's Amended Complaint does not describe any conduct by Defendants that violates Title VII, and Amekudzi does not allege that he participated in any investigation or proceeding pursuant to Title VII. Thus, his claim of retaliation must be dismissed. Cf. Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 194 (1st Cir. 1990) (ruling that 42 U.S.C. § 2000e–3(a) provides a remedy for retaliation only if a plaintiff's allegations of discrimination are substantiated).

Finally, Amekudzi alleges on several occasions that the defendants committed fraud. His Amended Complaint alleges that Defendants stole his income tax refund, but he does substantiate that claim. Thus, pursuant to section 1915, the Court dismisses this claim as "fantastic or delusional." See Neitzke, 490 U.S. at 327 (applying 28 U.S.C. § 1915).

Since none of Amekudzi's claims survive review, this suit shall be DISMISSED WITH PREJUDICE.

It is SO ORDERED.

>                               /s/
> James R. Spencer
> Chief United States District Judge

ENTERED this \_\_\_\_14th\_\_\_\_ day of December 2007